(46 App. Div. 151.)

HOLLIS v. DRESCHER et al.

(Supreme Court, Appellate Division, First Department.   December 22, 1899.)

FRAUDULENT CONVEYANCES—TRANSFER OF PROPERTY IN PAYMENT OF INDEBT-
     EDNESS—INADEQUACY OF CONSIDERATION.
     Three days before the execution of a general assignment by a corpora-
     tion, one of its stockholders, who had guarantied the indebtedness of the
     corporation to plaintiff, in the presence of and in the office of the attorney
     of another leading stockholder made an absolute conveyance to the husband
     of his wife's sister of equities in real estate to the value of $12,000, in
     payment of an alleged indebtedness of $3,500, which was not wholly estab-
     lished.   After the conveyance the grantor continued in control of the
     property as before, collecting the rents and managing it generally without
     any assistance from the grantee, who received from the rents whatever
     the grantor saw fit to give him.   Held, that the conveyance was fraudu-
     lent as against plaintiff, and should be set aside.

Appeal from special term, New York county.

Action by Hiram H. Hollis against Bernard Drescher, Pauline
Drescher, Aaron Cohn, and Mina Cohn, to set aside a conveyance of
real estate as fraudulent as against creditors.   From a judgment for
plaintiff, defendants Cohn and wife appeal.   Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN; PATTER-
SON, O'BRIEN, and INGRAHAM, JJ.

Charles J. Breck, for appellants.
Eugene F. Daly, for respondent.

O'BRIEN, J.   The plaintiff, as judgment creditor of the defend-
ant Bernard Drescher, brought this suit in equity to set aside a deed
of conveyance dated June 15, 1897, from the defendants Drescher
to the defendant Cohn, of the premises 71 Suffolk street and 81
Sheriff street, alleging that it was made to hinder, delay, and de-
fraud creditors.   A corporation engaged in the butchering business
under the title of Drescher, First & Co., wishing to do business with
the plaintiff, who was a dealer in live stock, and for the purpose
of inducing him to extend a credit, gave a guaranty, executed by
Drescher, First, and Wolf, by the terms of which the three persons
named agreed, to the extent of $3,000, to guaranty payment for all
live stock which he might thereafter sell and deliver to the corpo-
ration between January, 1897, and January, 1898.   To this written
guaranty were appended affidavits made by the guarantors,—that of
Drescher being to the effect that he was "worth the sum of $30,000
over and above all liabilities," and that he owned "No. 71 Suffolk
street, valued at $35,000, subject to a mortgage of $23,000; also,
lien of $1,633.33.   Also owns premises No. 81 Sheriff street, New
York City, valued at $35,000, subject to a mortgage of $21,000."
Relying on the guaranty and representations as to the solvency and
the pecuniary responsibility of the parties, the plaintiff sold and de-
livered live stock to the corporation between the dates named, pay-
ment for which not being made, he brought suit; and recovered two
judgments,—one against the corporation and Drescher and First,
and the other against Drescher, First, and Wolf.   Executions on
these judgments having been returned unsatisfied, this action was

brought to set aside the conveyance made to the defendant Cohn of the two houses which Drescher owned when the guaranty was given, and which, it was alleged, he had transferred in fraud of the plaintiff prior to the obtaining of the judgments. The defendant Cohn attempted to support the conveyance by claiming that he had received the same in payment of an antecedent indebtedness due from the defendant Drescher to him, amounting to $3,500. Upon the issue of fact thus raised the witnesses were heard, and the learned judge at special term decided that the plaintiff had established the fraudulent character of the conveyance, and by the judgment entered on this decision the deed was set aside. From the determination thus reached, this appeal is taken.

We have here presented a question of fact, which was peculiarly within the province of the court below to solve. If, therefore, the evidence adduced at the trial was sufficient to support the finding of fraud, the judgment must be affirmed. According to the testimony, the corporation made a general assignment for the benefit of creditors on June 18, 1897, and three days before the deed here sought to be set aside was executed in the office of Mr. First's attorney, when Mr. First and his attorney and all the defendants were present, and where every one was aware that the corporation was about to become insolvent and to make a general assignment. This circumstance alone would not be sufficient upon which to predicate the charge of fraud; for it was perfectly lawful for Drescher to apply his property to the payment of one creditor in preference to another, provided the debt which he thus sought to pay was an honest one, and the property given to the creditor did not in value greatly exceed the amount of the indebtedness, which of itself might be evidence of a fraudulent intent. We are here speaking, not of property taken as security for a debt, but of property purchased outright; for it is only in the latter case that the question of adequacy of price is important, it being legal for a creditor to accept any amount of property in excess of his debt, when he takes it merely as security. In that event, however, he is entitled only to the payment of his debt, and the balance is available for other creditors. Here the defendant Cohn claims to have purchased the property and to have paid therefor the full consideration, and, if the conveyance were good, there could be no possible share for other creditors in it. The adequacy of the price named and the character of the transaction are consequently of prime importance. Upon the question of value we have the statements of Drescher himself, when the guaranty was given, only a few months prior to the conveyance to Cohn, that, over and above incumbrances, the property was worth $24,000; and although, according to the testimony of the plaintiff's real-estate expert, this was a slightly exaggerated estimate, the equity over and above incumbrances is placed by him at not less than $12,000. In view of this evidence, the consideration named in the deed, of $3,500, even if we assume that such amount was honestly loaned and advanced, was clearly an inadequate price for the property. Furthermore, we are not satisfied upon this record that Cohn ever loaned to Drescher the full $3,500 fixed as the con-

sideration for the transfer. This amount, according to the testimony of the defendants, was made up of $3,000 loaned in small sums at different times, extending over a period of years, and $500 interest. Cohn testified that the money loaned was withdrawn from the Dry Dock Savings Bank at various intervals, and in support of this statement his account in the savings bank was produced, which, although it shows that from time to time he made withdrawals, does not satisfactorily identify the sums so withdrawn—which might have been for his own use—with the amounts he claims to have given Drescher. In explanation of the fact that the withdrawals are not identical with the alleged loans, Cohn states that the difference in the amounts was made up by money which he always had on hand, although in another place he testified that all moneys, as soon as he received them, were deposited in the savings bank. To substantiate the defendant's claim, we have, besides the savings-bank book, a demand note for $1,500, dated April 30, 1894, given by Drescher to Cohn, but nothing further except a statement by Drescher, dated January 23, 1897, and acknowledged before a notary, that the debt then amounted to $2,000. It may well be that Cohn advanced some money, but he did not prove that it amounted to $3,500, which, in view of the suspicious circumstances surrounding the transaction, we think he should have done. Of course, the judge below was not concerned with endeavoring to determine what amount, less than the consideration named, Cohn advanced, because he was not trying the question of whether Cohn should be allowed to have the property applied to the payment of any moneys which he had actually loaned. Cohn contended that he was entitled to hold the property as a bona fide purchaser for value, and the inquiry which the judge below was pursuing was to determine the validity of this claim, and whether the transaction between Drescher and Cohn was an honest one as to creditors. If they entered upon a fraudulent scheme to cheat creditors, then, even though Cohn might have advanced some small sum to Drescher by way of loans, he has only himself to blame, if, by reason of the unconscionable claim he made, he lost all. He did not come into court asking to be paid what was due him, but he insisted upon his right to retain the property, and he must stand or fall by the position which he thus occupied upon the first trial. Considering all the circumstances surrounding the transfer, we think the evidence would justify the inference that Cohn was concerned, not alone with obtaining payment of his own debt, if there was anything really due him, but with saving the property for Drescher. In this connection it is necessary only to advert to the fact that Drescher and Cohn had married two sisters, and occupied towards each other intimate family relations. Evidently, in the effort which Drescher made to defraud the creditors,—which fact, as against him, was conclusively established upon the trial,—his most available instrument for that purpose would be one who held the relation to him that Cohn did. Furthermore, it is not only certain that Drescher intended to defraud his creditors, but it is fairly inferable that he wished to do so with a view to ultimately benefiting himself; and here, again,

Cohn was in a position to assist him. The only question that is at all debatable, therefore, relates to whether Cohn knowingly entered upon the fraudulent scheme. This was resolved by the judge below adversely to Cohn, and, we think, upon sufficient evidence. All the facts and inferences lead to the conclusion that this was not a conveyance of property to one who honestly received it for a fair and adequate consideration advanced, and who thereafter regarded it as his own property. Not only have we the fact that the deed was given upon the eve of the insolvency of the corporation whose debts Drescher had guarantied to plaintiff, the unexplained presence of Mr. First, another guarantor, and his attorney at its execution, the evident inadequacy of consideration, the shifting and evasive statements as to why the transfer of the property was at that time made, but we have in addition—what is even more significant—the conduct of the parties after the so-called sale took place. Drescher had charge of the premises and collected the rents before as he continued to do after the deed was given. There was no apparent change of ownership. Drescher continued in the active control of the property, collecting the rents and managing it generally without any aid or assistance from Cohn, who, it seems, received from the rents just what Drescher saw fit to give him. We have not, of course, lost sight of the claim that after the conveyance Drescher was acting merely as Cohn's agent. Even in the face of this explanation, however, the entire circumstances of the transaction with plaintiff, beginning with the original statement of Drescher as to character and value of his property and the extent of his liability, and his failure then to state that he was indebted to Cohn in any sum whatever, followed by the use made of the alleged debt, in taking from the creditors a large amount of property, were, we think, properly stamped by the court below as fraudulent.

Although an appeal is made to us to do so, we are unable, as was the judge at special term, to go into the question of whether or not Cohn may have advanced some amount by way of loan. He did not allege in his answer, or claim upon the trial, that he took the property as security for his debt. The court below, on sufficient evidence, reached the conclusion that both Drescher and Cohn were guilty of entering upon a fraudulent transaction; and we can but repeat that Cohn has no one to blame if he loses what money, if any, he may have loaned. We think the judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.